THE PEOPLE OF THE STATE OF NEW YORK ex rel. KINGS COUNTY LIGHTING COMPANY, Relator, *v.* OSCAR S. STRAUS and Others, as Members of and Constituting the PUBLIC SERVICE COMMISSION FOR THE FIRST DISTRICT OF THE STATE OF NEW YORK, and the PUBLIC SERVICE COMMISSION FOR THE FIRST DISTRICT OF THE STATE OF NEW YORK, Respondents.

First Department, July 13, 1917.

Public service corporations — application by gas corporation for leave to issue and sell bonds for reimbursement of moneys expended from income — authority of Public Service Commission to dictate as to how money in treasury of corporation shall be disbursed.

Where, on an application by a gas corporation, under section 69 of the Public Service Commissions Law, for leave to issue and sell bonds to the amount of $134,545.43 "for reimbursement of moneys expended from income or such other moneys in the treasury for the construction, completion, extension or improvement of its facilities, plant or distributing system," it appears that under the rate for depreciation adopted by the corporation the sum of $48,209.16, claimed to have been expended from income for additions and improvements, was really expended out of the depreciation fund, an order of the Commission providing that such moneys "when so reimbursed to be used only to make good depreciation in the property of the company" should be modified by providing that out of $134,545.43 allowed for reimbursements of moneys expended from income the sum of $48,209.16 be used only to make good the said amount expended out of the depreciation reserve, or that, in the alternative, the total amount of bonds authorized for reimbursements be reduced by said amount.

The Public Service Commission has no authority to dictate as to how money in the treasury of a public service corporation shall be disbursed. If a corporation is actually entitled to issue bonds the Commission has no power to affix as a condition some act that it has no jurisdiction to compel; but it has power in an order granting consent to impose a condition based upon facts which justify the order with the condition.

CERTIORARI issued out of the Supreme Court and attested on the 16th day of December, 1916, directed to Oscar S. Straus and others, constituting the Public Service Commission of the First District of the State of New York, commanding them to certify and return to the office of the clerk of the county of New York all and singular their proceed-

ings had in connection with the application of the relator to issue certain bonds.

*Samuel F. Moran,* for the relator.

*Oliver C. Semple,* for the respondents.

SCOTT, J.:

The relator, a. public service corporation supplying gas to a limited area in the county of Kings, applied to the Public Service Commission, First District, for leave to issue and sell a certain amount of long term bonds. After a hearing the prayer of relator's petition was granted, but was accompanied by conditions which relator was unwilling to accept. A rehearing was applied for, and had, and the Commission thereupon made the order now sought to be reviewed.

The only question raised is as to a condition or qualification attached to the Commission's consent to the issue of bonds to the amount of $134,545.43, which was authorized to be issued " for reimbursement of moneys expended from income or such other moneys in the treasury for the construction, completion, extension or improvement of its facilities, plant or distributing system," the qualification or condition attached to the authorization of the issue of these bonds to which the relator objects is to the effect that such moneys " when so reimbursed to be used only to make good depreciation in the property of the company."

It appears from the evidence before the Commission and now brought up by the writ of certiorari that only a portion of the money expended for capital purposes, and for which it is sought to issue bonds, was derived from the depreciation account, the major part consisting of income. The result of the Commission's order will be, if enforced, to turn all this income into the depreciation account, and prevent its use for the lawful purposes to which income may be applied. This the relator claims is unauthorized. To pass upon this question requires a brief consideration of the creation of the depreciation fund.

Section 66, subdivision 4, of the Public Service Commissions Law (Laws of 1907, chap. 429; Consol. Laws, chap. 48;

842    People ex rel. Kings County Lighting Co. *v.* Straus.

First Department, July, 1917.    [Vol. 178.

Laws of 1910, chap. 480) authorizes the Commission to prescribe uniform methods of keeping accounts, records and books to be observed by gas corporations. The Commission adopted by an order of December 8, 1908, a uniform system of accounts which was applicable on and after January 1, 1909, for all gas corporations including this company. The requirements of the system of accounts have the force of law (*People ex rel. Bridge Operating Co.* v. *Public Service Comm.*, 153 App. Div. 129, 137.) At all events the relator accepted the order and acted under it and makes no complaint concerning it. This order for a system of accounts required that, when fixed capital is retired from service, depreciation applicable to the period after December 31, 1908, is to be charged to the depreciation reserve and that until otherwise ordered the amount estimated to be necessary to cover such depreciation month by month is to be based on a rule determined by the company, which rule may be amended. The relator filed a rule providing for the retention of eight cents per 1,000 cubic feet of gas sold and from January 1, 1909, to July 1, 1916, made its charges to operating expenses and its credit to accrued amortization of capital upon that basis. At the eight-cent rate, after taking care of its repairs and retirements, the amount in reserve accrued amortization of capital of the relator amounted December 31, 1915, to $120,402.15. In August, 1916, the relator filed an amended rule from July 1, 1916, providing for a charge of eleven and one-half cents per 1,000 cubic feet of gas sold to the account of " General Amortization — Gas," and stated that this is not in excess of a proper charge for depreciation. It was not the practice of the relator to set aside in a specific fund any cash or securities representing this depreciation reserve, but instead the same appeared and was taken care of in the bookkeeping by deduction from its fixed capital.

On September 10, 1915, the relator made application to the Public Service Commission for the First District pursuant to section 69 of the Public Service Commissions Law authorizing an issue of $675,000 of bonds, a part of said issue to be applied to the reimbursement of moneys actually expended prior to July 1, 1915, from income or from other moneys in the treasury of the relator and asked to be allowed

to make issue to the amount of $545,000 for the future acquisition of property, the construction, completion, extension or improvement of its plant or distributing system. Upon the hearing it appeared that the relator had between June 1, 1914, and July 1, 1915, expended from income and from other moneys in its treasury $134,545.43 for the acquisition of property and the construction, extension and improvement of its plant and distributing system. These expenditures, of course, added to the value of the fixed capital and, as it was the practice of the relator, as above stated, not to set aside any specific fund for depreciation but to cover the item by a bookkeeping charge which decreased the fixed capital, a certain part of this expenditure of $135,368.84 represented depreciation. An analysis of the condensed balance sheets (Commission's Exhibit 5) shows that under the eight-cent rate for depreciation adopted by the relator, $48,209.16 of this expenditure from income represented an amount charged to depreciation, spread over the accounts of the company and eventually showing only as a deduction from the value of the fixed capital. In other words, during the period in question the sum of $48,209.16, claimed to have been spent from income for additions and improvements, was really spent out of the depreciation fund. While the sum comes from income in the first instance, it was, as a matter of bookkeeping, set aside to depreciation and, similarly, as a matter of bookkeeping, came out of the fixed capital, for, according to the rule filed by the relator, it was necessary, and it was its practice, to deduct from fixed capital the amount requisite, at the eight-cent rate, to represent the depreciation fund. Therefore, if the relator were to be permitted to issue bonds to reimburse it for these expenditures from income, including this sum of $48,209.16, it would in effect be permitted to capitalize this depreciation fund and create an obligation of the company to that amount. This would be tantamount to permitting the relator to borrow money for the purpose of providing for a depreciation fund, a practice unsound in principle and one which not only nullifies the requirement for the creation of this reserve but which would ultimately lead a company into a serious financial condition. The Commission, therefore, was

naturally willing only to permit the treasury to be reimbursed by an issue of bonds on condition that such part of the proceeds as were equivalent to the sum spent out of the depreciation reserve should be restored to that reserve, and it coupled its permission with such a condition.  It is quite true that the Commission has no authority to dictate as to how money in the treasury of a public service corporation shall be disbursed and that if a corporation is actually entitled to issue bonds the Commission has no power to affix as a condition some act that it has no jurisdiction to compel.  Nevertheless, the Commission has power in an order granting consent to impose a condition based upon facts which justify the order with the condition.  (*People ex rel. Binghamton Light, H. & P. Co.* v. *Stevens*, 203 N. Y. 7, 20.)  That is to say, the Commission would have been compelled to deny the application to issue bonds to reimburse the treasury for money spent out of the depreciation fund, whereas it would have been not only justified but required to issue its consent if such had not been the fact.  The moment the depreciation fund was made good to the amount required by the rule filed by the relator there was no objection to authorizing an issue of bonds to reimburse the treasury for any expenditure actually made from income.  In other words, the condition was based upon facts which justified the order and without such condition the application must have been denied.

The trouble with the order, however, is that the Commission undertook to require the relator to apply to reserve out of this bond issue a much larger sum than $48,209.16, namely, the entire amount of the expenditure from income between June 1, 1914, and July 1, 1915, amounting to $134,545.43.  The basis of this appears to have been that the relator had in 1915 filed its new rule of eleven and one-half cents for depreciation. It was apparently reckoned by the Commission that if this rule of depreciation had been applied since 1909 it would have required setting aside for depreciation this much larger amount.  There was no legal justification for the Commission so doing.  The company was entitled under the law to fix its own rule or rate of depreciation and it fixed the same at eight cents.  In no event could the Commission, without taking an independent proceeding against the relator, in

which the relator would have notice and an opportunity to defend itself, make an order requiring it to change its whole system of accounting and put its depreciation charge upon some other basis than that adopted by the company under the law, and the earlier order of the Commission.

It follows, therefore, that the order of the Commission should be modified by providing that out of the $134,545.43 allowed for reimbursements of moneys expended from income the sum of $48,209.16 be used only to make good the said amount spent out of the depreciation reserve or that, in the alternative, the total amount of bonds authorized for reimbursements be reduced from $134,545.43 to $86,336.27.

CLARKE, P. J., LAUGHLIN, DAVIS and SHEARN, JJ., concurred.

Order of the Commission modified as directed in opinion. Order to be settled on notice.